IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

AMY JO FRAZIER,                                )
                                               )
                    Plaintiff,                 )
                                               )
-vs-                                           )  Case No.   CIV-17-556-R
                                               )
THE CITY OF STILLWATER,                        )
OKLAHOMA, a political subdivision              )
of the State of Oklahoma,                      )
                                               )
                    Defendant.                 )

## COMPLAINT

Plaintiff, Amy Jo Frazier, for her causes of action against Defendant, the City of

Stillwater, a political subdivision of the State of Oklahoma, alleges and states as follows:

### The Parties

1.      Plaintiff Amy Jo Frazier ("Frazier") is and at all relevant times hereto has

been a citizen of the State of Oklahoma and a resident of the Western District of

Oklahoma.

2.      Defendant City of Stillwater ("Stillwater") is a political subdivision of the

State of Oklahoma with its principal place of business in the City of Stillwater, State of

Oklahoma.

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1343, 42

U.S.C. §12117 and 42 U.S.C. §2000 e-5 because Frazier's claims arise under federal law.

4.      Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in Payne County which is situated in the Western District of Oklahoma.

<u>Facts Applicable to All Claims</u>

5.      Amy Jo Frazier is a female with an actual disability that substantially limits one or more of her major life activities and/or was regarded as having such a disability.

6.      The City of Stillwater, Oklahoma, hired Amy Jo Frazier in 2006 as a member of the Stillwater Parks and Recreation Department.

7.      Plaintiff performed her job duties and responsibilities with the City of Stillwater in a satisfactory manner leading to a series of promotions and salary increases over the next several years.

8.      Plaintiff, while employed and satisfactorily performing her job duties for the City of Stillwater, was diagnosed with Multiple Sclerosis in 2007.

9.      Immediately upon learning of her diagnosis, Plaintiff advised her immediate supervisor.

10.     After the diagnosis of Multiple Sclerosis and as a condition of her Multiple Sclerosis, Plaintiff was further diagnosed with Optic Neuritis by her healthcare provider.

11.     Plaintiff also notified her immediate supervisor of the diagnosed Optic Neuritis and its potential complications which could impact her vision.

12.     From 2007 until 2010, Plaintiff continued to perform her job duties and responsibilities in a satisfactory manner while she continued to promote and receive promotions and raises.

13.     On July 5, 2010, Plaintiff's optometrist notified and confirmed with the City of Stillwater of the diagnosis of Optic Neuritis due to its advancing impact of Plaintiff's vision.

14.     Plaintiff's optometrist further explained to the City of Stillwater that her diagnosis caused an inflammation of the optic nerve which caused symptoms of pain and vision loss.

15.     As of July 5, 2010, Plaintiff's optometrist opined that her vision had deteriorated to the point that some "daily life" tasks were impacted.  More specifically, Plaintiff's optometrist opined that her conditions could limit activities like driving and the ability to read small print.

16.     Despite the diagnosis, Plaintiff's optometrist advised the City of Stillwater that Plaintiff could still perform her job tasks but would need an ongoing and continuing accommodation.

17.     Plaintiff continued to satisfactorily perform her job duties and responsibilities over the next few years with a reasonable accommodation which was provided by the City of Stillwater.

18.     On December 21, 2011, Plaintiff requested additional accommodations to assist in maintaining her quality of work.

19.     Plaintiff's accommodations requests included:

- IZOOM, a computer program purchased on a USB drive that can be plugged into any computer causing a magnification of the contents on the screen.

3

- IPhone Upgrade-apps available for the new IPhone version assisting with the magnification process which was available at a reduced rated.

- Extra-large Dome Magnifier-magnification portable device to allow the reading of small print.

- Desk Lamp – assists the Dome Magnifier to help read small print.

20.    Plaintiff caused a letter requesting the accommodations to be sent to her immediate supervisor, Jim Scott, and copied Christy Luper with Human Resources and Barbara Bliss on the correspondence.

21.    After sending the initial December 2011 request for an accommodation, Plaintiff's optometrist submitted another letter to clarify her condition and her ability to perform the essential functions of her job.

22.    Plaintiff's optometrist, in January 2012, stated that in his professional medical opinion that Plaintiff was safe to drive and met the requirements to maintain her driver's license.

23.    Plaintiff's optometrist also clarified and stressed that the vision in her right eye was sufficient to perform her job tasks but recognized that Plaintiff may require additional accommodations in the future as her conditions changed.

24.    In August 2012, based in part to her continued satisfactory job performance, Plaintiff was promoted to a new position within the City of Stillwater.

25.    On August 16, 2012, Plaintiff assumed the new responsibility and related job objectives as the City of Stillwater Business Improvement District Coordinator for Downtown Stillwater.

4

26.     As another accommodation of Frazier's actual and/or perceived disability, the City installed a computer at Frazier's home so that she could access the City's computer servers remotely when it was necessary for Frazier to work at home due to her disability.

27.     From 2012 until 2015, Frazier continued to perform the essential functions of her job and met her job objectives with the accommodations provided to her by the City of Stillwater.

28.     The City Manager publicly acknowledged Frazier's ability to perform her job and meet her job objectives with the accommodations provided as evidence by a meeting she was asked to attend at the City of Stillwater with the City Manager and a downtown business owner to discuss incentive grants.

29.     During the meeting, the downtown business owner made comments directed toward Frazier questioning her health condition and stated that "Amy Jo decides not to come into the office anytime there is a cloud in the sky."

30.     Galloway defended Frazier to the downtown business owner and acknowledged publicly her accommodations and that the IT department had set up Frazier to work remotely from her home to accommodate her health condition.

31.     On October 22, 2015, Dan Galloway, the City Manager for the City of Stillwater, announced the expanded role for Angela McLaughlin as she promoted to the position Economic Development Coordinator for the City of Stillwater.

32.     On October 28, 2015, Dan Galloway circulated an internal email throughout the Stillwater Economic Development office further identifying the new chain

of authority – "Amy Jo will no longer be a direct-report to Melissa but will now be direct report to Economic Development Coordinator, Angela McLaughlin."

33.     McLaughlin with direct knowledge of Frazier's medical condition and upcoming doctor's appointment, along with Frazier's accommodations, contacted Frazier at her personal residence the day after the internal email outlining the new chain of authority.

34.     During the phone call, McLaughlin pressed Frazier for a date she would be returning to work, a need to meet immediately and discuss workplace expectations, and a demand to meet face to face on an emergent basis.

35.     Frazier reminded McLaughlin of the City of Stillwater's accommodations which allowed her to work from home on those occasions where she experienced an exacerbation of her Multiple Sclerosis.

36.     McLaughlin retaliated against Frazier and began to verbally harass her by commenting that the City of Stillwater's policy manual does not allow employees to work from home.  McLaughlin further harassed Frazier by commenting that she was never in the office and was perceived as not working.

37.     Frazier responded to the harassing nature of McLaughlin's comments by reminding McLaughlin that she had previously held the same position and should know the job required her to be out in the community and involved in community events outside the office environment.

38.     Frazier also reminded McLaughlin that she had received an accommodation for her known and recognized disability and that the list of accommodations was approved by the City of Stillwater.

39.     Frazier also contacted Galloway on the same day and reported the harassing and retaliatory actions of McLaughlin.  In response, Galloway told Frazier to continue forward with her accommodations as she had always done in the past.

40.     Two days after the change in supervisors, Plaintiff continued to experience an exacerbation of her Multiple Sclerosis; and, like past accommodations known and approved by the City of Stillwater, scheduled an immediate doctor's appointment with her physician due to her personal concerns and deteriorating vision problems.

41.     Plaintiff also sent McLaughlin an email explaining the continued worsening of the medical issue and scheduling of a doctor's appointment.

42.     Due to the stress of the hostile work environment created by McLaughlin, Frazier's Multiple Sclerosis immediately worsened causing Frazier to seek emergent care from her optometrist.

43.     Frazier's optometrist examined Frazier and warned that should she return to work within the stressful work environment created by McLaughlin, she would suffer an adverse impact on her Multiple Sclerosis and Optic Neuritis condition.

44.     Due to the emergent condition, Frazier's optometrist suggested that she continue to work but her health would be better by working from home in an effort to avoid the hostility of McLaughlin.

45.    On November 4, 2015, Frazier notified McLaughlin that she was completing her medical treatments which included out-patient IV steroid treatments but that she was experiencing significant debilitating side effects and told McLaughlin of her optometrist's suggestions of working from home.

46.    In another email exchange of November 4, 2015, Frazier repeated her optometrist's opinion and consistent with her accommodations told McLaughlin she would continue to work from home under the circumstances.

47.    Despite knowledge of the accommodations, McLaughlin responded by suggesting that Frazier to take a sick day rather than allow for the previously agreed accommodations.

48.    Frazier continually updated McLaughlin on her medical progress for the next several days while she continued to recover and work from her stress-free home environment.

49.    McLaughlin, rather than recognizing Frazier's ability to work from home while meeting her job objectives and performance obligations, continued to insist that Frazier utilize her sick days.

50.    Frazier's optometrist provided written documentation to the City of Stillwater setting forth his medical opinion that to give Frazier the best situation for the positive visual outcome, she should continue to work from home whenever possible to reduce the amount of stress.

51.    Following this increased hostile, negative and retaliatory actions, Frazier's optometrist sent additional documentation to the City of Stillwater on November 14,

2015 at the request of the Human Recourses Department.  Frazier's optometrist stated that despite the recent stressor increased by the hostile work environment that Frazier could continue her work but would need to learn new mobility techniques to cope with her workplace requirements.

52.     Frazier's optometrist also concluded and recommended that Frazier work from home for one month while she adapted to the recent changes in her visual abilities.

53.     Frazier presented her optometrist's letter to the City of Stillwater's Human Resources Department who summarily denied Frazier's request citing that her physician's statement was insufficient.

54.     In a further act of retaliation, Frazier received correspondence from the City of Stillwater's Human Resources Department forcing her to take FMLA despite being able to continue to perform the essential functions of the job with the previously-approved accommodations.

55.     During the initial leave, Frazier was able to draw from her accrued vacation and sick leave.  However, the accrued leave expired and was exhausted on December 30, 2015.

56.     On February 3, 2016, the City of Stillwater advised Frazier that her FMLA would expire on February 22, 2016, and unless she provided a physician's release, the City of Stillwater would fill her position.

57.     Prior to the expiration of the FMLA, Frazier spoke on the phone with Human Resources and, once again, explained the previous workplace accommodations. Frazier further explained that she was able to perform the essential functions of her job

before, with the previously-approved accommodations, during and after the forced FMLA.

58.     Despite these representations and with direct knowledge of a reasonable accommodation, the City of Stillwater refused Frazier's request to return to work and terminated her employment.

59.     Frazier filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission, and this suit is timely commenced following her receipt of a Notice of Suit Rights.

FIRST CAUSE OF ACTION-VIOLATION OF THE AMERICANS WITH
DISABILITIES ACT AMENDMENTS ACT-DISCRIMINATION IN EMPLOYMENT

60.     Plaintiff incorporates by reference Paragraphs 1 through 59 as though set forth in full herein.

61.     This claim is brought and jurisdiction lies pursuant to the Americans With Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12177, which incorporates by reference Section 706 of Title VII of the Civil Rights Act of 1967, as amended, 42 U.S.C. § 2000e-5.

62.     Plaintiff is an individual with a "disability" as that term is defined in 42 U.S.C. § 12102(1).

63.     Plaintiff is a "person" within the meaning of Section 101(7) of the ADAAA, 42 U.S.C. § 12111(7), and Defendant is an "employer" within the meaning set forth in 42 U.S.C. § 12111 (5)(A).  Defendant is also a "covered" entity within the meaning of ADAAA Section 101(2), 42 U.S.C. § 12111(2).

64.     Plaintiff, with reasonable accommodation, could perform the essential function described by her physician and customarily and routinely assigned to the within Defendant's workplace.

65.     Plaintiff has been a "qualified individual with a disability" at all times material hereto.

66.     Plaintiff's disability was improperly a motivating factor in Defendant's decision to terminate Plaintiff in violation of 42 U.S.C. § 12112(a).

67.     As a direct and approximate result of Defendant's aforementioned wrongful conduct, Plaintiff has sustained substantial economic loss including past and future compensation, and other economic benefits.   Plaintiff has further sustained loss of financial stability, peace of mind, and future security, and has suffered embarrassment, humiliation, mental anguish and emotional distress and discomfort, and loss enjoyment of life, all to her detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant:

(1)     That judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendant in violation of the ADAA, as amended;

(2)     That Defendant be ordered to make Plaintiff whole by providing back pay and any and all other remedies authorized by the ADAA, as amended, including but not limited to salary and benefits, and accrued interest from the date of her termination until entry of judgment against Defendant and for compensatory damages for Plaintiff's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by the ADAA;

(3)     That Plaintiff be awarded her costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and,

(4)     That Plaintiff be granted such legal and equitable relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT– REGARDED AS DISABLED

68.     Plaintiff incorporates by reference Paragraphs 1 through 67 as though set forth in full herein.

69.     Because of Plaintiff's physical condition as described herein, and its perception of how that physical condition affected Plaintiff in performing her job, Defendant believed that Plaintiff was not physically able to do her job following the approval of the accommodations by Plaintiff's physician.

70.     Defendant regarded Plaintiff as being disabled to such an extent that she could not perform the essential functions of her job, although she was performing her job duties and functions at the time of her termination.

71.     As a direct and approximate result of Defendant's aforementioned wrongful conduct, Plaintiff has sustained substantial economic loss including past and future compensation, and other economic benefits.  Plaintiff has further sustained loss of financial stability, peace of mind, and future security, and has suffered embarrassment, humiliation, mental anguish and emotional distress and discomfort, and loss enjoyment of life, all to her detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant:

(1)     That judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendant in violation of the ADAA, as amended;

(2)   That Defendant be ordered to make Plaintiff whole by providing back pay and any and all other remedies authorized by the ADAA, as amended, including but not limited to salary and benefits, and accrued interest from the date of her termination until entry of judgment against Defendant and for compensatory damages for Plaintiff's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by the ADAA;

(3)   That Plaintiff be awarded her costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and,

(4)   That Plaintiff be granted such legal and equitable relief as the Court may deem just and proper.

## THIRD CAUSE OF ACTION – VIOLATION OF THE ADAAA – <u>RETALIATION</u>

72.   Plaintiff incorporates by reference Paragraphs 1 through 71 as though set forth in full herein.

72.   Plaintiff engaged in protected opposition to unlawful discrimination by complaining that she was being discriminated against on the basis of her disability.

73.   Defendant took materially adverse employment actions against Plaintiff because of her protected opposition as described herein.

74.   Defendant's reasons for the materially adverse employment actions are a mere pretext and sham to cover up for its intentional retaliation against Plaintiff.

75.   As a direct and approximate result of Defendant's aforementioned wrongful conduct, Plaintiff has sustained substantial economic loss including past and future compensation, and other economic benefits.   Plaintiff has further sustained loss of financial stability, peace of mind, and future security, and has suffered embarrassment,

humiliation, mental anguish and emotional distress and discomfort, and loss enjoyment of

life, all to her detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant:

(1)    That judgment be entered declaring that Plaintiff was unlawfully
       retaliated against by Defendant in violation of the ADAA, as
       amended;

(2)    That Defendant be ordered to make Plaintiff whole by providing
       back pay and any and all other remedies authorized by the ADAA,
       as amended, including but not limited to salary and benefits, and
       accrued interest from the date of her termination until entry of
       judgment against Defendant and for compensatory damages for
       Plaintiff's mental anguish, pain and suffering, and other non-
       pecuniary losses, including punitive damages allowed by the ADAA;

(3)    That Plaintiff be awarded her costs and expenses of this litigation
       including reasonable attorney's fees and expert witness fees; and,

(4)    That Plaintiff be granted such legal and equitable relief as the Court may
       deem just and proper.

## FOURTH CAUSE OF ACTION – VIOLATION OF THE ADAAA – HOSTILE WORK ENVIRONMENT

76.    Plaintiff incorporates by reference paragraphs 1-75 though set forth in full

herein.

77.    Plaintiff was qualified for her job and performed all of her duties and

responsibilities in a satisfactory manner as alleged above.

78.    The City of Stillwater workplace was permeated with discriminatory

intimidation based on Plaintiff's disability as alleged above.

79.     The discriminatory intimidation was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment as alleged above.

80.     The discriminatory intimidation was unwelcome and unwanted because Plaintiff did not solicit or incite the conduct and she regarded it as undesirable, offensive, and a cause of the exacerbation of her disability.

81.     The discriminatory intimidation was sufficiently severe or pervasive, in both subjective and objective terms, to create an objectively hostile or abusive work environment that altered the terms and conditions of Plaintiff's employment.

82.     Defendant City knew or should have known about the harassment as described herein, had the authority to control the harassers' conduct or otherwise protect Plaintiff from the harassment, but it failed to take prompt and appropriate corrective action, and instead terminated Plaintiff, the victim of the severe or pervasive harassment.

83.     As a direct and approximate result of Defendant's aforementioned wrongful conduct, Plaintiff has sustained substantial economic loss including past and future compensation, and other economic benefits.   Plaintiff has further sustained loss of financial stability, peace of mind, and future security, and has suffered embarrassment, humiliation, mental anguish and emotional distress and discomfort, and loss enjoyment of life, all to her detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant:

(1)     That judgment be entered declaring that Plaintiff was unlawfully retaliated against by Defendant in violation of the ADAA, as amended;

15

(2)     That Defendant be ordered to make Plaintiff whole by providing back pay and any and all other remedies authorized by the ADAA, as amended, including but not limited to salary and benefits, and accrued interest from the date of her termination until entry of judgment against Defendant and for compensatory damages for Plaintiff's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by the ADAA;

(3)     That Plaintiff be awarded her costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and,

(4)     That Plaintiff be granted such legal and equitable relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED,


s/Woodrow K. Glass
Stanley M. Ward, OBA#9351
Woodrow K. Glass, OBA#15690
Barrett T. Bowers, OBA#30493
WARD & GLASS, L.L.P.
1601 N. W. 36th Street, Suite 100
Norman, Oklahoma 73072
405-360-9700
405-360-7902 (fax)
woody@wardglasslaw.com
ATTORNEYS FOR PLAINTIFF


**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**